UNITED STATES of America,
Plaintiff-Appellee,

v.

Rose LEVERETTE, Defendant-
Appellant.

No. 74-1929.

United States Court of Appeals,
Ninth Circuit.

Sept. 19, 1974.

Albert R. Gamble (argued), Tucson, Ariz., for defendant-appellant.

Christopher L. Pickrell, Asst. U. S. Atty. (argued), Tucson, Ariz., for plaintiff-appellee.

Before BARNES and CARTER, Circuit Judges, and LINDBERG,* District Judge.

## OPINION

JAMES M. CARTER, Circuit Judge:

This is an appeal from the judgment of conviction for importation with intent to distribute 110 grams of heroin and 26 grams of cocaine, in violation of 21 U.S. C. §§ 841(a)(1), 952(a), and 960(a)(1). The only issue in the case is whether the facts known to the government agents were sufficient to show a "real suspicion" justifying a strip search. We affirm.

At approximately 9:30 a. m. on December 31, 1973, the defendant, Rose Leverette, a young black female, arrived at the Nogales, Arizona, pedestrian gate from Mexico. Upon inspection of her purse, Customs inspectors found two airline tickets for a flight from Chicago to Tucson in the name of "Mr. and Mrs. Williams." The defendant stated that they were her tickets, that she lived in Chicago, that she had been in Nogales for two to three days, and that her husband was in Chicago.

Soon after the defendant's arrival, Charles Williams, a young black male, arrived at the port of entry. He was

* Honorable William J. Lindberg, Senior United States District Judge, Western District of Washington, sitting by designation.

identified as Charles Williams through an Illinois driver's license and this fact, along with the inspector's conversation with the defendant, was communicated to Customs inspector Ralph Guerra, who was then questioning the defendant.

The defendant identified herself to Guerra by means of a welfare IBM card bearing a name other than Williams. She stated that her husband was in Chicago and that the tickets with the name Williams were for a friend, but she refused to say why she was carrying them. Charles Williams had told another inspector that he was from Chicago and had come to Nogales to "get away from it all." He stated that he was alone and denied knowing the defendant when she was pointed out to him. The defendant also denied knowing Charles Williams.

Inspector Guerra instructed a female Customs inspector to search the defendant. As the defendant began to undress, the inspectress detected what she believed to be the odor of heroin. The inspectress told the defendant to remove her slip and upon doing so observed a bulge in her underclothing. The defendant was then instructed to hand over whatever was concealed there, and she turned over three prophylactics which were found to contain heroin and cocaine.

The only contention by the defendant on appeal which merits discussion is her argument that the trial court erred in denying her motion to suppress the heroin and cocaine as illegally obtained.

■ In order for a strip search to be reasonable under the fourth amendment, the Customs official must have "at least a real suspicion, directed specifically to that person." Henderson v. United States (9 Cir. 1967) 390 F.2d 805, 808. This "real suspicion" must be

"subjective suspicion supported by objective, articulable facts that would reasonably lead an experienced, prudent customs official to suspect that a particular person seeking to cross our border is concealing something on his

body for the purpose of transporting it into the United States contrary to law." United States v. Guadalupe-Garza (9 Cir. 1970) 421 F.2d 876, 879. We conclude that such articulable, objective facts did exist in this case, and that the strip search of the defendant was therefore justified.

■ The defendant arrived at the port of entry in the early morning, carrying little luggage, travelling alone but in possession of two airplane tickets bearing the names of Mr. and Mrs. Williams. She stated that her husband was still in Chicago. When it was discovered that a Mr. Williams had arrived at the entry point shortly after the defendant, was from Chicago but denied knowing the defendant, and the defendant stated that the tickets were for friends but refused to say why she was carrying them, the suspicions of inspector Guerra were justifiably aroused.

Inspector Guerra testified at the hearing on the motion to suppress that he was familiar with a particular method of smuggling narcotics into the United States. This method consisted of a female carrying the narcotics on her person through the port of entry alone, followed approximately ten to fifteen minutes later by her male counterpart. In particular, young black persons from large midwestern cities had employed this method at the Nogales port of entry on at least three occasions in the several months preceding the entry of the defendant. At trial, inspector Guerra added that it was unusual for a tourist from as far away as Chicago to be travelling alone, to be entering the country that early in the morning, and to be carrying only three or four dollars worth of purchases.

Under the circumstances, an experienced Customs inspector would justifiably have entertained a "real suspicion" that either the defendant or Mr. Williams or both were concealing contraband. Because the bulge in the defendant's underclothing was readily visible to the inspectress—there was no "man-

ual or visual intrusion into the [vaginal] cavity itself"—the "clear indication" test for a probe of the cavity itself is inapplicable. United States v. Holtz (9 Cir. 1973) 479 F.2d 89, 92. The motion to suppress was properly denied.

The judgment of conviction is affirmed.