**UNITED STATES of America,
Appellee,**

v.

**Jesus RIVERA–MARQUEZ, Appellant.**

No. 74–3061.

United States Court of Appeals,
Ninth Circuit.

July 18, 1975.
Certiorari Denied Nov. 11, 1975.
See 96 S.Ct. 369.

John Cleary, Asst. Federal Defender (argued), San Diego, Cal., for appellant.

Herbert Hoffman, Asst. U. S. Atty. (argued), Harry D. Steward, U. S. Atty., James W. Meyers, Asst. U. S. Atty., on the brief, San Diego, Cal., for appellee.

## OPINION

Before KOELSCH, CHOY and GOODWIN, Circuit Judges.

ALFRED T. GOODWIN, Circuit Judge:

This appeal from a conviction of illegal importation of cocaine challenges the validity of a border search and the constitutionality of a lifetime parole given under 21 U.S.C. § 841(b)(1)(A).[1]

Acting upon an informer's tip that a man named Jesse or Jesus Rivera would be bringing hard narcotics across the international border at San Ysidro, on the

---

1. 21 U.S.C. § 841(b)(1)(A):

"In the case of a controlled substance in schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. If any *person commits* such a violation after one or more prior convictions of him for an offense punishable under this paragraph, or for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States relating to narcotic drugs, marihuana, or de-pressant or stimulant substances, have become final, such person shall be sentenced to a term of imprisonment of not more than 30 years, a fine of not more than $50,000, or both. Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of *at least* 3 years in addition to such term of imprisonment and shall, if there was such a prior conviction, impose a special parole term of *at least* 6 years in addition to such term of imprisonment." (Emphasis added.)

day the informer had indicated, border patrol agents subjected four men named Rivera to intensive pat-down searches. The defendant was the fourth Rivera patted down that day. In their palpation of Rivera's body, the officers detected a large, anomalous lump in the genital area. This discovery led to a search which revealed a condom containing 197 grams of cocaine nestled in a fabric pouch worn by Rivera in addition to his undershorts.

After his court trial and conviction, Rivera was sentenced to a prison term to be followed by the challenged lifetime parole period.

## I.

We find no constitutional flaw in the search. Rivera's claim that the pat-down search should be examined by "strip search" standards is frivolous. *See United States v. Chase,* 503 F.2d 571, 574 (9th Cir. 1974). And the informer's tip, including as it did the name of the suspected smuggler as well as the other information justifying particular scrutiny when Rivera crossed the border, clearly supported the kind of "pat-down" used by officers checking for weapons or other contraband at the border.

Rivera argues that the statute which allows border searches requires suspicion; and that the officers had none in this case. This argument is frivolous. Rivera misapprehends 19 U.S.C. § 482. *See United States v. Storm,* 480 F.2d 701, 703–704 (5th Cir. 1973). "[T]here is reason and probable cause to search every person entering the United States from a foreign country, by reason of such entry alone." *Witt v. United States,* 287 F.2d 389, 391 (9th Cir.), *cert. denied,* 366 U.S. 950, 81 S.Ct. 1904, 6 L.Ed.2d 1242 (1961); *see Klein v. United States,* 472 F.2d 847, 849 (9th Cir. 1973).

We do not decide whether a strip-search occurred when Rivera dropped his trousers. After the lump was discovered, the officers had a "real suspicion" (*see Henderson v. United States,* 390 F.2d 805, 808 (9th Cir. 1967)) that Rivera

had concealed contraband in his nether-garments. This suspicion would have justified a strip-search if Rivera was subjected to one.

## II.

Rivera also raises the propriety of the lifetime special parole term imposed under 21 U.S.C. § 841(b)(1)(A). He offers two theories in support of his claim that it is invalid. The first is that § 841(b)(1)(A) should be construed in a fashion limiting the maximum sentence to 15 years imprisonment and 3 years special parole. Not even the most liberal reading of the provision yields that result, for it ignores the statute's "at least" language.

Rivera also asserts that § 841(b)(1)(A) violates the cruel-and-unusual-punishment prohibition of the Eighth Amendment. This challenge to the "life" special parole term brings back the question we did not reach in *United States v. Kenyon,* 519 F.2d 1229 (9th Cir. 1975). The *Kenyon* case was remanded on Fifth Amendment grounds.

Rivera's position is that a statute which may "allow a defendant convicted of simple importation who then, for example, fails to report to his parole officer, to be incarcerated for life * * * *" is monstrous.

In *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), Mr. Justice Brennan, in his concurring opinion, noted that the meaning of the Cruel and Unusual Punishment Clause is not precise—that its scope is not static:

" * * * the Cruel and Unusual Punishments Clause prohibits the infliction of uncivilized and inhuman punishments. The State, even as it punishes, must treat its members with respect for their intrinsic worth as human beings. A punishment is 'cruel and unusual,' therefore, if it does not comport with human dignity." 408 U.S. at 270, 92 S.Ct. at 2742.

"The [Eighth] Amendment must draw its meaning from the evolving standards of decency that mark the progress of a

maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958) (Opinion of Warren, C. J.). "A punishment out of all proportion to the offense may bring it within the ban against 'cruel and unusual punishments.'" *Robinson v. California*, 370 U.S. 660, 676, 82 S.Ct. 1417, 1425, 8 L.Ed.2d 758 (1962) (Douglas, J., concurring). It must be asked whether the punishment imposed has a positive relationship with curing the ill perceived. *Cf.* 370 U.S. at 677–678, 82 S.Ct. 1417. In this case we believe that it does.

The scope of our review of sentences under the Eighth Amendment was defined in *Pependrea v. United States*, 275 F.2d 325 (9th Cir. 1960).

"It is well settled that a sentence within a valid statute cannot amount to 'cruel and unusual punishment,' and that *when a statute provides for such punishment*, the statute only can be attacked * * *." 275 F.2d at 329. (Emphasis added.)

The standard is somewhat circular: a sentence within a valid statute cannot be cruel and unusual; yet, if a defendant asserts that his sentence is cruel and unusual, he can challenge the statute.

It is a sound requirement that a sentence at least appear to be cruel and unusual before its authorizing statute can be attacked on Eighth Amendment grounds. Courts do not render advisory opinions on facts that do not constitute a case or controversy. Thus, Rivera's hypothetical sentence envisioning an innocuous drug offender incarcerated for life under § 841(b)(1)(A)'s lifetime special parole term does not trigger an inquiry into the constitutionality of that section. We must examine Rivera's sentence.

Rivera's criminal and medical histories[2] as well as his life expectancy and the nature of his offense brought within the court's discretion Rivera's sentence to a lifetime special parole term. In Rivera's case, the sentence is not cruel and unusual. Rivera, therefore, has not satisfied the condition precedent to statutory attack on Eighth Amendment grounds. An Eighth Amendment attack on § 841(b)(1)(A) must await an appropriate set of facts.

Affirmed.

---

2. At the time of sentencing, Rivera was nearly 60 years old and suffering from cancer. Six prior convictions (three for narcotics offenses) had not provided Rivera with the incentive to permanently "retire" from his exploitation as a transporter of narcotics across the border.