**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Cecilio Armando WILMOT,
Defendant-Appellant.**

No. 77–1770.

United States Court of Appeals,
Ninth Circuit.

Oct. 25, 1977.

Roger Curtis McKee, Millsberg, Dickstein, Kartvedt & McKee, San Diego, Cal., for defendant-appellant.

Sandra J. Wittman, Asst. U. S. Atty. on the brief, Terry J. Knoepp, Asst. U. S. Atty., San Diego, Cal., for plaintiff-appellee.

Before TRASK, WALLACE and ANDERSON, Circuit Judges.

WALLACE, Circuit Judge:

Wilmot appeals from his conviction for importation of a controlled substance and possession with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 952, 960, and 963. He claims that the heroin seized from him and introduced into evidence after the denial of his motion to suppress was obtained as a result of an illegal search by customs officers. We disagree and affirm.

Wilmot entered into the United States from Mexico at the port of entry at Calexico, California. He was driving a 1970 Buick with Daly City, California license plate frames and was accompanied by a young woman. At the initial checkpoint, Wilmot and his companion were questioned by a customs inspector, as a result of which he ascertained that the couple had been in Mexico for only a short period of time. Applying a "profile,"[1] the inspector referred the vehicle and its occupants to the secondary inspection area.

During the course of the secondary inspection, a second customs inspector attempted to give Wilmot a pat-down search to determine if he had a weapon. Wilmot declined to spread his legs. When the inspector attempted to spread them, Wilmot closed them. When the inspector finally was able to accomplish the pat-down, he felt something in the groin area. He then requested Wilmot to empty his pockets. Thereafter, in a second pat-down, he still felt the object. He then took Wilmot to a

1. The "profile" applied to Wilmot consisted of a number of characteristics found by customs agents to be frequent among narcotics smugglers, e. g., a young couple traveling together, from out of town, having had only a short stay in Mexico, etc.

private area where he directed him to drop his pants. When Wilmot did so, a package was discovered which was later found to contain heroin.

██ It is well established that "searches made at the border, pursuant to the long-standing right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Ramsey,* 431 U.S. 606, 616, 97 S.Ct. 1972, 1979, 52 L.Ed.2d 617 (1977). As we stated in *Henderson v. United States,* 390 F.2d 805, 808 (9th Cir. 1967):

> Thus every person crossing our border may be required to disclose the contents of his baggage, and of his vehicle, if he has one. The mere crossing of the border is sufficient cause for such a search. Even "mere suspicion" is not required. We assume that the same rule would apply to the contents of his or her purse, wallet, or pockets.

On the other hand, we have made it clear that additional cause will be required when the search is sufficiently intrusive. For example, when a strip search is made, there must be "real suspicion" directed specifically to the person searched. *United States v. Leverette,* 503 F.2d 269, 270 (9th Cir. 1974).

██ In *United States v. Rivera-Marquez,* 519 F.2d 1227 (9th Cir.), *cert. denied,* 423 U.S. 949, 96 S.Ct. 369, 46 L.Ed.2d 285 (1975), customs officials made a pat-down search. We rejected as "frivolous" the claim that such a search should be evaluated under strip search standards. We adhere to that position. Indeed, for protection of customs officers, they must be allowed to search reasonably for weapons during an investigation at the border. While this type of search might become so extensive that it is unreasonable without sufficient factors in addition to entry into the country, *cf. United States v. Rivera-Marquez, supra,* 519 F.2d at 1228, the facts before us do not present such a case. This appears to be nothing more than a typical pat-down. If more were necessary to justify this activity, Wilmot's suspicious conduct

in resisting the mere spreading of his legs clearly constitutes a reasonable basis for any "extensive" pat-down search.

Once the officers felt the object during the justified pat-down inspection, there was the requisite "real suspicion" justifying the strip search.

AFFIRMED.