**UNITED STATES of America**

v.

**Vernon Earl WALDEN, Appellant.**

**No. 77–2066.**

United States Court of Appeals, Third Circuit.

Argued May 2, 1978.

Decided June 15, 1978.

As Amended Aug. 8, 1978.

---

Thomas Colas Carroll, Carroll, Creamer, Carroll & Duffy; Philadelphia, Pa., for appellant.

Robert N. DeLuca, U. S. Atty., Walter S. Batty, Jr., Asst. U. S. Atty., Chief, Appellate Section, Edward S. G. Dennis, Jr., Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before HUNTER, WEIS, Circuit Judges, and COHEN,* District Judge.

## OPINION

JAMES HUNTER, III, Circuit Judge.

Vernon Earl Walden appeals his conviction of having violated 21 U.S.C. §§ 841, 846 by conspiring with four codefendants to distribute heroin and to possess heroin with intent to distribute. The testimony of his involvement in the drug conspiracy came primarily from two witnesses, an undercover agent of the Drug Enforcement Administration and one of Walden's employees. The agent described purchases and negotiations for purchases of heroin from defendants Russell Hines and Clarence Ford. He testified that Walden was present during one of the sales and that Hines had once said he was selling Walden's drugs. The agent also testified that he had sold to Walden four boxes of glassine bags, used for packaging heroin. Walden's employee testified to Walden's involvement in a series of heroin sales. After the jury returned a guilty verdict, Walden was sentenced to a fifteen year term of imprisonment and to a lifetime special parole term. He raises several issues in this appeal.

Walden first contends that the district court erred in denying motions for a continuance and severance. These motions arose from the change of defense counsel which occurred near the time of trial.

The record shows the following. On April 15, 1977, Walden was arrested and appeared before a United States Magistrate for arraignment. His counsel at that time was Mr. Harry Seay. The magistrate was apparently unaware that Mr. Seay also represented defendants Ford and Hines. Walden next appeared in court on June 6, the day set for trial. At that time the judge read into the record a letter from Mr. Seay, dated May 26, 1977, which informed the court that there was no conflict of interest in his joint representation of Walden, Ford and Hines. The court then advised Walden of his right to separate representation. At this point, Mr. Seay disclosed that there might be a conflict between the interests of Walden and of defendants Ford and Hines. After the disclosure, Walden requested separate counsel. The proceeding was recessed for one week.

On June 13, the defendants and counsel again appeared in court. Appellant at that time was represented by Mr. Harold Randolph. The record does not clearly reveal the circumstances under which Mr. Randolph entered the case. Mr. Seay spoke with Mr. Randolph concerning the representation of Walden on June 6, and at some point later Mr. Randolph was in contact with the trial judge. The record does not show when Mr. Randolph actually entered the case, nor does it indicate the extent to

---

* Honorable Mitchell H. Cohen, Senior United States District Judge for the District of New Jersey, sitting by designation.

which Walden was involved, if at all, in finding substitute counsel. At the time of the June 13 proceeding, Mr. Randolph had not spoken with his client. He explained that he had planned to discuss the case with Mr. Seay and then to meet with Walden over the previous weekend. Mr. Randolph indicated that he had failed to meet with his client because Mr. Seay had felt constrained by attorney-client privilege in relation to Ford and Hines and could not discuss the case fully. The trial was recessed for approximately one hour to allow Mr. Randolph to speak with his client. When the proceeding reconvened, counsel moved for a continuance and a severance. He argued that he was not prepared to try the case, given its complexity and his lack of contact with his client. He also indicated that he would need time to locate certain witnesses. The request for a severance was supported primarily by the alleged prejudice arising from the continued presence of Mr. Seay in the case on behalf of the other defendants. The government opposed the motion for a severance, but indicated that it had no objection to a continuance of the whole case for a few weeks. The court granted a continuance until 9:30 the next morning to allow time for preparation. The trial was adjourned at 10:55 a. m.

The next entry in the record shows that the trial reconvened on the morning of June 14. Mr. Randolph unsuccessfully renewed his motions for a continuance and severance. *Voir dire* was conducted through the rest of that day and the next morning. The first witness was called the afternoon of June 15; the jury reached its verdict on June 24.

■ A change of counsel close to the date set for trial may under some circumstances warrant a continuance to permit adequate time for preparation of a defense. *See generally United States v. Uptain*, 531 F.2d 1281 (5th Cir. 1976). The decision of the district court denying a continuance will be reversed only on a showing of an abuse of discretion. *United States v. Addonizio*, 451 F.2d 49, 61 (3d Cir.), *cert. denied*, 405 U.S. 936, 92 S.Ct. 949, 30 L.Ed.2d 812

(1972); *United States v. Weathers*, 431 F.2d 1258, 1260 (3d Cir. 1970); *United States v. Greenburg*, 419 F.2d 808 (3d Cir. 1969). We have indicated that the trial court should indicate on the record the reasons for its denial of a motion for a continuance to facilitate our review of that decision. *United States v. Weathers, supra*, 431 F.2d at 1260.

■ Given the record in this case, we are not able to decide at this time whether the court abused its discretion. Mr. Randolph's first appearance in the case was literally on the eve of the rather complex trial. While there is some indication that he entered the case earlier, the court below made no findings, and the record is far from clear on this issue. Although the court on June 13, in granting only a one-day delay, indicated its belief that counsel would have sufficient time to prepare his case and obtain witnesses, there are no findings concerning the time available to counsel and the extent to which preparation was hindered by the assertion of privilege by Walden's former counsel. The government did not oppose this motion for a continuance of a few weeks. While there may be reasons why the interests of the court and of other defendants might outweigh the need asserted by Walden for further time, the record does not contain the trial court's balancing of those factors. The record contains no reasons for the denial on June 14 of the renewed motion for a continuance.

We therefore believe that the case must be remanded to the trial court for a statement of the reasons for the denial of a further continuance on June 13 and 14. On remand, the district court may also in its discretion hold a hearing to supplement the record and may make further findings on this issue. We as well do not reach at this time the interrelated question of whether the court abused its discretion in denying the motions for a severance.

Appellant next contends that the trial court erred in denying a motion for production of handwritten draft of a report prepared by Wallace B. Mitchell, an agent of the Drug Enforcement Administration who

testified for the government. Before cross-examination of Mitchell, the government had disclosed to the defense typewritten copies of investigative reports written by the agent, as required by the Jencks Act.[1] During cross-examination the agent testified that the report had been prepared from handwritten notes or drafts. The handwritten material was still in the agent's possession. Defense counsel moved for the production of the additional material under the Act. He argued that the handwritten drafts or notes were "statements" of the witness under the Jencks Act, 18 U.S.C. § 3500(e). The government countered that as a matter of law, preliminary drafts need not be disclosed where the final version of a report is in the defendant's possession. The prosecutor described the rough materials as containing nothing more than what was in the final report. He stated that the rough draft was prepared by Agent Mitchell and was then passed on to a supervisor who made "certain editorial changes." The report was then returned to the agent who checked the edited version for substantive accuracy and then had the document typed. The government offered the handwritten materials for *in camera* inspection by the court.

Instead of examining the materials or hearing witnesses, the district court ruled that as a matter of law, the rough notes and draft were not disclosable under the Jencks Act. The court relied on dicta in *United States v. Carrasco*, 537 F.2d 372, 377 (9th Cir. 1976), which indicated that once an agent prepared a final report, his rough notes were not "statements" under the Act.

■ We believe that the district court erred by not at least inspecting the materials. The dicta in *Carrasco* upon which the court relied must be read in the context of *United States v. Johnson*, 521 F.2d 1318 (9th Cir. 1975). *Johnson* is similar to the facts presented here. An agent of the Drug Enforcement Administration was called to testify for the government. His case report was turned over to the defense, but extant rough notes used to prepare the report were withheld. The trial court did not inspect the notes, but held that they were not reachable under the Jencks Act. The court of appeals held that the trial court erred in failing to inspect the notes. The case was remanded to determine whether the notes were "statements" of the agent as defined in the Act, and whether, if the notes should have been disclosed, the error was harmless.

There is some evidence in the record that Agent Mitchell's handwritten materials might be "statements" under the Jencks Act. For example, the report draft was at least in a form sufficiently acceptable to the agent that he allowed it to be reviewed by his superior. Therefore, the draft might have been "adopted or approved" by the agent. 18 U.S.C. § 3500(e). *See generally United States v. Carrasco, supra,* 537 F.2d at 375. Given this evidence, the trial court should not have relied on the prosecutor's description of the handwritten materials, but should have examined the draft and perhaps should have taken testimony from Agent Mitchell. *See Goldberg v. United States,* 425 U.S. 94, 108–12, 96 S.Ct. 1338, 47

---

1. 18 U.S.C. § 3500 (1970), which provides in part:

(b) After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

.    .    .    .    .

(e) The term "statement", as used in subsections (b), (c), and (d) of this section in relation to any witness called by the United States means—

(1) a written statement made by said witness and signed or otherwise adopted or approved by him; or

(2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness to an agent of the Government and recorded contemporaneously with the making of such oral statement.

L.Ed.2d 603 (1976); *Campbell v. United States*, 365 U.S. 85, 81 S.Ct. 421, 5 L.Ed.2d 428 (1963); *United States v. Judon*, 567 F.2d 1289 (5th Cir. 1978); *United States v. Johnson, supra.* While the rough draft, as a matter of the judge's discretion, need not be disclosed if it is substantially identical to the final report, *see, e. g. United States v. Meisch*, 370 F.2d 768, 772 (3d Cir. 1966), the trial court may make such a determination only after taking evidence on the contents of the document.

On remand, the trial court should examine the materials handwritten by Agent Mitchell and determine on the record whether those materials are "statements" of the agent as defined by the Jencks Act, 18 U.S.C. § 3500(e).[2] The court may in its discretion hold a hearing and take testimony on this issue. If the court finds that the materials were required to be disclosed under the Act, it should then make a determination of whether the failure to disclose was harmless error. *See United States v. Judon, supra*, 567 F.2d at 1294–95; *United States v. Johnson, supra*, 521 F.2d at 1320; *Government of the Virgin Islands v. Lovell*, 378 F.2d 799, 805–806 (3d Cir. 1967), *aff'd after remand*, 410 F.2d 307 (3d Cir.), *cert. denied*, 396 U.S. 964, 90 S.Ct. 440, 24 L.Ed.2d 428 (1969). If the non-disclosure was error and was not harmless, the court should indicate this finding in the record so that this court may appropriately act on this appeal after the case is returned to us.

■ Appellant has raised several other arguments which we find to be without merit. First, Walden argues that the trial court's jury charge on conspiracy constituted reversible error. He questions the following portion of the charge:

Moreover, because of the particularly secretive nature of illicit drug distribution, proof of a drug distribution conspiracy and participation of individual conspira-

tors in it is often uniquely circumstantial . . . . Once the existence of a conspiracy is shown, slight evidence may be sufficient to connect a defendant with it.

At trial, defendant objected only to the portion of the charge describing the secretive nature of illicit drug distribution and stating that evidence was often "uniquely circumstantial." We hold that the court's choice of this language was not an abuse of discretion.

■ For the first time on appeal, defendant challenges the portion of the charge stating that "slight evidence" may be sufficient to connect a defendant to a conspiracy. In *United States v. Cooper*, 567 F.2d 252 (3d Cir. 1977), decided after the trial below, we stated that such a charge was error, since it conflicted with the proper instruction that defendant's guilt be proven beyond a reasonable doubt. Because there was no objection raised at trial as required by F.R.Crim.P. 30, we will reverse only if the charge constituted plain error. F.R.Crim.P. 52(b); *Government of the Virgin Islands v. Navarro*, 513 F.2d 11, 16 (3d Cir.), *cert. denied*, 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 698 (1975). Upon reviewing the charge as a whole, we hold that the instructions on the government's burden of proof were sufficiently clear that the charge as given was not plain error. *See United States v. Partin*, 552 F.2d 621, 628 (5th Cir. 1977), *cert. denied*, 434 U.S. 903, 98 S.Ct. 298, 54 L.Ed.2d 189 (1977); *United States v. Brasseux*, 509 F.2d 157 (5th Cir. 1975).

■ Second, Walden challenges the failure of the trial court to suppress certain evidence obtained after a search of an automobile. We hold that the agents had probable cause to search the vehicle and that exigent circumstances obviated the need for a warrant. *See Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

---

**2.** We would emphasize that this case deals with undisclosed materials which are currently in the government's possession. We do not consider questions arising from the destruction of notes and rough drafts which have been reduced to a final report. *Cf. United States v. Vella*, 562 F.2d 275 (3d Cir. 1977) (preservation

of notes of witness interviews); *United States v. Harrison*, 173 U.S.App.D.C. 260, 524 F.2d 421 (1975) (same). *See also United States v. Parker*, 549 F.2d 1217, 1223–24 & n.8 (9th Cir.), *cert. denied*, 430 U.S. 971, 97 S.Ct. 1659, 52 L.Ed.2d 365 (1977).

Lastly, Walden contends that his lifetime special parole term was not authorized by statute and constitutes cruel and unusual punishment. He was sentenced under 21 U.S.C. § 841(b)(1)(A), which provides in part:

In the case of a controlled substance in schedule I or II which is a narcotic drug, such person shall be sentenced to a term of imprisonment of not more than 15 years, a fine of not more than $25,000, or both. . . . Any sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 3 years in addition to such term of imprisonment . . . . .

This section has been interpreted by several courts of appeals to permit a lifetime parole term. *United States v. Jones*, 540 F.2d 465, 468–69 (10th Cir. 1976), *cert. denied*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977); *United States v. Rivera-Marquez*, 519 F.2d 1227 (9th Cir.), *cert. denied*, 423 U.S. 949, 96 S.Ct. 369, 46 L.Ed.2d 285 (1975); *United States v. Rich*, 518 F.2d 980, 986–87 (8th Cir. 1975), *cert. denied*, 427 U.S. 907, 96 S.Ct. 3193, 49 L.Ed.2d 1200 (1976). We approve the reasoning of those courts and hold that section 841(b)(1)(A) permits the sentence imposed below. We also find that lifetime parole in the circumstances of this case does not constitute cruel and unusual punishment. *See United States v. Rea*, 532 F.2d 147 (9th Cir.), *cert. denied*, 429 U.S. 837, 97 S.Ct. 107, 50 L.Ed.2d 104 (1976); *United States v. Rivera-Marquez*, *supra*. We do not accept appellant's argument that the parole term is "tantamount to life imprisonment." Imprisonment as a result of parole revocation is only speculation at this time and does not present a ripe question for decision. *United States v. Rea*, *supra*, 532 F.2d at 149.

We will remand this case to the district court for two purposes. First, the court should supplement the record with a statement of reasons for the failure to grant a further continuance in response to defendant Walden's motions on June 13 and 14.

Second, the court should examine Agent Mitchell's handwritten notes and draft report and make findings on whether these constitute "statements" which must be disclosed under the Jencks Act and, if so, whether the failure to disclose was harmless error. The court may in its discretion hold hearings and make further findings on these issues. The case shall then be returned to this court for our consideration.

We retain jurisdiction over this appeal.[3]

---

**3.** *See United States v. Press*, 401 F.2d 499 (3d Cir. 1968).