**CHURCH OF SCIENTOLOGY OF CALIFORNIA, on its own behalf and on behalf of its members, et al., Plaintiffs,**

v.

**William SIMON, Secretary of the Treasury, et al., Defendants.**

No. CV 76–2160–WPG.

United States District Court, C. D. California.

Oct. 13, 1978.

H. Peter Young, Santa Monica, Cal., for plaintiffs.

Andrea Sheridan Ordin, U. S. Atty., Frederick M. Brosio, Jr., Chief, Civ. Div., Michael E. Wolfson, Asst. U. S. Attys., Los Angeles, Cal., for defendants.

Before BARNES, Circuit Judge, and GRAY and FERGUSON, District Judges.

## MEMORANDUM OF DECISION

WILLIAM P. GRAY, District Judge.

This three-judge court was convened to consider the constitutionality of 19 U.S.C. § 1305,[1] which prohibits the importation into the United States of several categories of documents and articles, including any writing or document that is obscene or contains:

"  .   .   . any matter advocating or urging treason or insurrection against the United States, or forcible resistance to any law of the United States, or containing any threat to take the life or inflict bodily harm upon any person in the United States   .   .   .."

Under the authority of this statute, the United States Customs Service searches materials entering this country from abroad. The plaintiffs filed suit to enjoin the enforcement of this statute and to prohibit the customs officers from searching documents without obtaining a search warrant.

The relevant facts in the instant case are fairly straightforward. Four cartons of papers and documents were shipped from England, via international air cargo, to Church of Scientology employees in Los Angeles County. On July 3, 1976, the Customs Inspector on duty at Los Angeles International Airport opened the cartons, briefly scanned the documents, expressed uncertainty regarding the importability of the materials, and detained the cartons for further review of their contents.

Subsequently, special customs agents more carefully reviewed the documents and, on July 7, 1976, the District Director of Customs concluded that the contents were importable. On that same day, the Church of Scientology filed suit for damages and injunctive relief. On July 13, 1976, the cartons of documents were released to the plaintiffs.

A temporary restraining order issued in this case enjoined the Customs Service from copying or disseminating copies of any of the documents contained in the cartons. The Customs Service was permitted, however, to disclose the materials to the United States Attorney, who could make one copy of documents he found appropriate for criminal evidentiary purposes or for defense of any damage claims that the plaintiffs might assert.

The plaintiffs raise several arguments in support of their claims for injunctive relief. First, they contend that Section 1305 is facially unconstitutional. Second, the plaintiffs urge that even if the statute is deemed constitutional, the method of en-

---

1. A three-judge court was convened because the plaintiffs seek to restrain certain customs searches and seizures permitted by that statute. In all actions filed prior to August 12, 1976, that seek to enjoin enforcement of a statute, adjudication by a three-judge court is proper. 28 U.S.C. §§ 2281 et seq. The instant suit was filed on July 7, 1976.

forcement in the instant case was improper. The plaintiffs take the position that a warrant was required initially to read the private, noncommercial documents shipped from abroad. Finally, the plaintiffs contend that once the Customs Service deemed the documents to be importable under Section 1305, its agents could not continue to read, detain, copy or disseminate copies of their documents without a warrant. We are unpersuaded by these arguments within the context of the facts of this case and we accordingly deny the request for an injunction.

### CONSTITUTIONALITY OF 19 U.S.C. § 1305

The Church of Scientology asserts that Section 1305 is overbroad, a prior restraint on speech, and void for vagueness. We disagree with these arguments, and hold that the statute is constitutional when properly construed and applied.

The plaintiffs insist that the statute is unconstitutionally overbroad, for it prohibits the importation of written materials that discuss violence as an abstract doctrine, as well as "action now" materials. It is obvious that the statute does not incorporate specifically the restrictions set forth in *Brandenberg v. Ohio*, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969), which held that a state cannot proscribe advocacy of the use of force " . . . except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." 395 U.S. at 447, 89 S.Ct. at 1829. Nonetheless, we read such standards into Section 1305 in order to uphold its constitutionality. In doing so, we follow the example set by the Supreme Court in *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971) and in *United States v. 12 200-Ft. Reels*, 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1972).

In *Thirty-Seven Photographs*, the Supreme Court applied constitutional standards to uphold the statute's validity. The plaintiffs in that case had argued that Section 1305 was unconstitutional in that it

failed to specify procedural time limits for judicial determination of obscenity as required by the First Amendment. Rather than invalidate the statute based on this lack of an express standard, the Court adhered to the " . . . cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." 402 U.S. at 369, 91 S.Ct. at 1404. Similarly, in *12 200-Ft. Reels, supra,* the Court foreclosed an overbreadth attack, although the statute prohibited the importation of obscene materials both for private use and possession, as well as for commercial use.

In accordance with these decisions upholding the constitutionality of 19 U.S.C. § 1305, we interpret the "advocacy" section of that statute in a manner consistent with the Constitution. Thus, we will "read in" the standards set forth in *Brandenberg v. Ohio, supra,* and construe the statute to avoid the overbreadth attack.

■ We also reject the plaintiffs' argument that the statute permits an unconstitutional prior restraint of speech through the detention of imported materials. In this case, the Church of Scientology's papers, which consisted of many thousands of pages, were detained for a very short period by the Customs Service before the Service determined the papers to be importable. Under the Customs Service's broad powers to restrict imports and conduct a search of materials entering the country from abroad, this temporary delay and retention of documents do not constitute a constitutional deprivation.

■ Finally, the plaintiffs' argument that the statute is void for vagueness must also fail. This contention relates to the scope of discretion afforded the Secretary of the Treasury to admit books of recognized literary or scientific merit. The question of an improper exercise of this discretionary power is not presented by the facts of this case, and so we need not resolve it within this decision. Thus, we hold that the statute is constitutional as applied to advocacy issues, just as it previously has been

held constitutional as applied to obscenity issues.

## ENFORCEMENT OF 19 U.S.C. § 1305

We also hold that the search pursuant to the statute was conducted in a constitutionally valid manner. The plaintiffs argue unsuccessfully that warrantless reading of materials entering the United States from abroad is suspect. We disagree with their contentions that a warrant was needed for the original inspection and that a warrant was required once the documents were deemed importable pursuant to § 1305.[2]

█ It is indisputable that the instant case involves a border search. The Customs Service has the statutory authority to examine materials coming into the United States, and the Supreme Court has enunciated clearly the position that the government possesses an inherent right to protect itself by stopping and examining persons and property entering the country from abroad. *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 612 (1977).

In addition, the Constitution has given Congress broad, comprehensive powers to regulate commerce with foreign nations, and under this power "[i]mport restrictions and searches of persons or packages at the national borders" are justified by different "considerations and different rules of constitutional law from domestic regulations." *United States v. 12 200-Ft. Reels,* 413 U.S. 123, 125, 93 S.Ct. 2665, 2667, 37 L.Ed.2d 500 (1972).

Under its general powers in setting import restrictions, Congress may promulgate regulations regarding the importability of obscene material and material advocating the overthrow of the government. To enforce these regulations, the Customs Service has the right to search luggage and persons at our national borders. This search necessarily involves the examination or review of the materials in question, for the customs officers must scan or peruse and perhaps even read the materials to determine whether or not they are importable.

The Supreme Court recently reconsidered the standards and requirements for border searches in *United States v. Ramsey,* 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 612 (1977). The Court reaffirmed the policy that border searches without probable cause and without a warrant are reasonable. In that case, the customs officials opened letter size envelopes arriving airmail from Thailand which they reasonably suspected contained illegally imported narcotics. The Court concluded that mail entering the country from overseas was not entitled to any greater privacy than material coming from abroad by any other mode of entry.

In line with the reasoning set forth in *Ramsey,* the search involved here must be measured against the normal border search standards. The Court did leave open the question, however, of when a border search might be unreasonable and "particularly offensive." 431 U.S. at 618, 97 S.Ct. at 1980. However, it would be inappropriate and unnecessary for this court to determine what is reasonable under all circumstances, or what type of search would be unreasonable. It is sufficient that in this case the search was reasonable and complied with the more stringent border search test promulgated by the Ninth Circuit, in *United States v. Wilmot,* 563 F.2d 1298 (9th Cir. 1977). In that decision, the opinion cites *Ramsey* for the well-established principle that routine border searches "are reasonable simply by virtue of the fact that they occur at the border." It then stated that in order to justify an intrusive search, additional cause is necessary, and held that for a strip search "there must be 'real suspicion' directed specifically to the person searched." 563 F.2d at 1300.

---

2. Complaints regarding allegedly unlawful operation or administration of a statute normally are not the proper subject of adjudication by a three-judge court under the standards set forth in 28 U.S.C. §§ 2281 *et seq.* However, in the interests of judicial economy, we may exercise our discretion to resolve pendent statutory claims, and we do so here. *See, Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970).

 The instant case withstands analysis under the Ninth Circuit's "real suspicion" test. The initial search, simply as a border search, was reasonable. It appears that the customs officer developed a "real suspicion" as to the importability of the contents of the cartons as a result of this initial search. We conclude that the customs officer's real suspicion concerning the importability of the documents fulfilled the additional cause requirement, and provided the basis for the more intrusive search that subsequently took place. Thus, the actions of the customs officers were proper and the effectuation of the border search was valid.

Finally, we reject the plaintiffs' argument that the government had to obtain a search warrant to continue searching, detaining and copying the documents. The "plain view" doctrine provides that an officer may seize evidence without a warrant if that officer has a proper justification for being coincidentally in a position to come upon the incriminating evidence. *Harris v. United States,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

The plaintiffs have neither argued nor presented any credible evidence in this case that the original inspection of the documents was conducted in bad faith or that the initial Section 1305 search was used as a guise for obtaining incriminating evidence for use against the Church of Scientology in other proceedings. Accordingly, we must conclude that the initial search was conducted in good faith and a proper inspection occurred.

■ The customs officers had a right to inspect the shipments and could seize any evidence of another crime, under the "plain view" doctrine, without first obtaining a search warrant. This conclusion regarding the permissible absence of a search warrant is buttressed by the Supreme Court's comment in *Ramsey, supra.* In *Ramsey,* the customs officials opened the airmail envelopes, discovered the heroin, resealed the envelopes and sent them to the Drug Enforcement Administration for further action. The Drug Enforcement Administration obtained search warrants after it received the envelopes. The Supreme Court treated the search warrants as an unnecessary and insignificant step, for the original opening and inspection of the envelopes had been legal. We hold, similarly, that a search warrant would be unnecessary, for the customs officers already were examining the documents in good faith and therefore the "plain view" doctrine is controlling.

For the foregoing reasons, the plaintiffs' application for a preliminary injunction will be denied and the action dismissed. This opinion shall constitute findings of fact and conclusions of law, as authorized by Rule 52(a) of the Federal Rules of Civil Procedure.