**UNITED STATES of America**

v.

**Norman Francis HEARD.**

Crim. No. 77–176.

United States District Court,
E. D. Pennsylvania.

Sept. 27, 1977.

---

**173**

Clarence Ford, was convicted of aiding and abetting Heard's distribution of heroin, and both men were convicted of conspiracy to distribute heroin. Heard advances two arguments in support of a motion for a new trial: first, the testimony of the principal witness against him, an undercover agent, should have been stricken because the agent did not preserve contemporaneous notes of the transaction, and second, the charge to the jury was coercive in stating that Ford could not be found guilty of aiding and abetting unless Heard was guilty of the substantive offense of distributing.

The facts may be briefly stated. Wallace B. Mitchell, a Philadelphia policeman, testified that while working under cover he made arrangements with the defendant, Clarence Ford, to purchase 20 bundles of heroin for $1300. The transaction took place at a taproom, the Linfel Lounge. After receiving the money, Ford told Mitchell to wait at the end of the bar. Mitchell did so and less than a minute later, Heard entered and asked Mitchell if he was the one who was to get the 20 bundles. Mitchell replied in the affirmative and both men walked to a rear area where Heard delivered four small paperbags to Mitchell. Mitchell examined two of the bags and was satisfied they contained heroin. Heard then asked if Mitchell had given the money to Ford. Both Ford and Heard were subsequently arrested.

Heard testified in his own defense that on occasion he worked for Ford and had done so on the morning of the day in question. Early that afternoon he was in the vicinity of the Linfel Lounge when a man known to him only as "Slim" asked that he deliver a package to the bar. Heard said that he entered the bar and saw a man who fitted the description provided by Slim, a man who was, of course, Officer Mitchell. Heard denied both that he had made any reference to "20 bundles" and that Officer Mitchell had opened the packages in his presence.

---

Edward H. Weis, Asst. Public Defender, Philadelphia, Pa., for Norman Heard.

Wallis Wetlesen, Asst. U. S. Atty., Philadelphia, Pa., for United States.

## OPINION

DITTER, District Judge.

Norman Francis Heard was convicted of distributing heroin. His co-defendant,

Ford did not testify and offered no evidence in his own behalf.[1]

Relying on *United States v. Harris*, 543 F.2d 1247 (9th Cir. 1976), and *United States v. Harrison*, 524 F.2d 421 (D.C.Cir. 1975), the defendant argues that Mitchell's failure to retain contemporaneous notations of the times various events took place prevented effective cross-examination and thus that Mitchell's testimony should have been stricken. These times were subsequently made a part of a typed report referred to by Officer Mitchell during his testimony and used by the defense on cross-examination.

This same contention was made in *United States v. Vella*, 562 F.2d 275 (3d Cir., 1977), where the Court of Appeals, per curiam, rejected the government's assertion that the preservation of such notes would constitute an unnecessary burden on law enforcement resources, and held that these notes "should be kept and produced so that the trial court can determine whether the notes should be made available to the [defendant] under the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), or the Jencks Act [18 U.S.C. § 3500]." The court did not require the production of the notes in that case, however, concluding that the failure to preserve the notes was harmless error in light of the other evidence in the record as well as the apparent good faith administrative decision which led to the notes' destruction. The same reasoning must be applied here. Whether or not the events in question happened at certain precise times or not was really of little import. The jury was well aware of the clash of testimony between

Mitchell's account of his conversation with Heard in the bar and the way in which Heard described that same event. The jury rejected Heard's version and accepted Mitchell's, but not because Mitchell was precise about minutes or hours and Heard was not. Defense counsel's ability to comment about the failure to preserve the notes and about a mistake in Mitchell's report concerning the number of bundles purchased was far more valuable then a list of times from Mitchell ever could have been.

Heard's second argument is that he was prejudiced when I instructed the jury on the proof that would be required for a guilty verdict as to Ford.

Heard's defense was that he did not know the content of the packages which he handed to Officer Mitchell. In addition, Heard testified that the packages had come not from Ford, as the government asked the jury to infer, but from Slim. I told the jury that Heard could not be convicted unless he acted with knowledge and gave an extensive charge on the meaning of that word. Knowledge was stated to be a highly personal thing, a matter of subjective belief. It was pointed out that knowledge may come from the body's senses or may be acquired by the process of reasoning. I defined knowledge for the jury as an awareness of a high probability that something is so, adding that even though there may be an awareness of a high probability of a specific fact, knowledge does not exist if there is actual belief to the contrary.[2] The jury was also charged that to convict it would have to find Heard had knowledge that the substance he delivered to Officer Mitchell was heroin; in other words, that

---

1. A witness called by Heard testified that he worked at a garage near the Linfel Lounge and that Heard and Ford had done work on a vending machine at the garage. He was unable to state the time, however, when he saw them and the jury's acceptance of his testimony would not have precluded their guilt.

2. The basis of this charge was the dissenting opinion in *United States v. Jewell*, 532 F.2d 697, 706–07 (9th Cir.), cert. denied 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976), which was largely based on Section 2.02(7) of the Model Penal Code. Section 2.02(7) con-

tains a definition of knowledge. It provides "[w]hen knowledge of the existence of a particular fact is an element of the offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist." Section 2.02(7) has been cited with approval by the Supreme Court. *Turner v. United States*, 396 U.S. 398, 416 and n. 29, 90 S.Ct. 642, 652, 24 L.Ed.2d 610, 623 (1970), and *Leary v. United States*, 395 U.S. 6, 46 n. 93, 89 S.Ct. 1532, 1553, 23 L.Ed.2d 57, 87 (1969).

he was aware there was a high probability that the packages in question contained heroin—unless, despite being aware of such a high probability, he actually believed the packages did not contain heroin. The jury was told Heard's knowledge was important as to both counts for which he had been indicted.

So far as Ford was concerned, I said he was charged with aiding and abetting Heard's distribution of heroin. Aiding and abetting was defined and the jury was instructed that it required participation in a criminal venture in some way so that the purposes of the venture would be accomplished. The jury was informed it could not find Ford guilty of aiding and abetting the distribution of heroin unless it concluded that heroin was knowingly and intentionally distributed by Heard, pointing out that the indictment charged Ford with aiding and abetting Heard and that unless Heard's guilt was established, Ford could not be guilty of either aiding and abetting or of conspiracy.

It is this portion of my charge which Heard contends was prejudicial to him. Heard argues that the jury wanted to convict Ford and that in the face of my instructions, it convicted Heard as the necessary prerequisite for a guilty verdict as to Ford.

In view of *United States v. Bryan*, 483 F.2d 88 (3d Cir. 1973), *United States v. Azadian*, 436 F.2d 81 (9th Cir. 1971), and *United States v. Provenzano*, 334 F.2d 678 (3d Cir.), cert. denied 379 U.S. 947, 85 S.Ct. 440, 13 L.Ed.2d 544 (1964), my charge as to Ford was probably more favorable than the Court of Appeals would require. In *Bryan* a defendant's conviction of aiding and abetting was affirmed despite the fact that his co-defendant, charged as a principal, had been acquitted because of a reasonable doubt as to his criminal intent. In *Azadian*, supra, the principal was found not guilty by reason of entrapment, but the conviction of the aider and abettor was affirmed. *Provenzano* states as a general rule that in order to convict a defendant of aiding and abetting, the proof must establish "the

crime in question was committed by someone and that the person charged as an aider and abettor, aided and abetted in its commission." 334 F.2d at 691. It is not a prerequisite, however, that the principal be tried and convicted or in fact even be identified.

Based on these cases, it could certainly have been argued by the government that my charge was too favorable as to Ford. The corollary urged by Heard that the charge was therefore prejudicial to him just does not follow. Under the facts in this case and the charge to that point, the limiting, cautionary words as to Ford were necessary. Prior to this time, I had given careful and explicit instructions concerning Heard. It then became necessary to consider the requisites for a guilty verdict as to Ford, a matter which could have been handled in one of three ways.

First, I could have ignored the logical and legal connection between aiding and abetting and the actual distribution of heroin and said nothing about it. To have done so would have been to reject common sense and the teachings of *Provenzano*, supra. See 334 F.2d 691.

Secondly, the language of *Provenzano* could have been employed and the jury told that Ford could only be guilty if he aided and abetted "someone" in the distribution of heroin. But, under the facts of this case, that "someone" could only have been Norman Francis Heard. Heard admitted he handed the heroin to Officer Mitchell. There was no testimony and no contention that anyone else had done so. At oral argument, counsel for Heard suggested that perhaps Ford might have entrusted the heroin to Slim who in turn asked Heard to deliver it. The introduction of another person between Ford and Heard would not affect the guilt of either. If Heard knowingly delivered heroin and if Ford participated in the crime in some way, both were guilty. Assuming there was a Slim, what he did or did not do, knew or did not know, would be immaterial as to their guilt.

Thirdly, the jury could have been instructed as it was—that if Heard had

knowledge, he could be found guilty of distributing heroin, and secondly, if, but only if, Heard was guilty, Ford could be found guilty of aiding and abetting and conspiracy.

 I reject Heard's argument that the jury so wanted to convict Ford,[3] that to do so its members were willing to convict Heard although they thought he was innocent. To accept this contention would require me to believe that the jurors were so prejudiced against Ford[4] that they would ignore my instructions and their solemn oaths and further that they were stupid, hypocritical, and disingenuous. I have no basis for doing so.

Heard's trial was fair. Under all the circumstances, there was no error in the charge which prejudiced Heard. His motions must be refused.

---

3. Heard's counsel argues that the jury wanted to convict Ford because it felt he was a bad man as evidenced by the fact that after the verdict, some jurors stated their objections to being asked during voir dire to give name, address, employer, etc. These jurors said they were concerned about the fact that defendants, armed with this data, might thereafter contact them. To argue this shows a determination to convict Ford at whatever the cost to Heard is wild procrusteanism.

4. Actually, there was nothing to show any prejudice against either Ford or Heard.