**UNITED STATES of America**

v.

**Kenneth S. HARRIS, Romaine G. Phillips, Matthias Brown, a/k/a "Sonny".**

**No. 87–00296.**

United States District Court,
E.D. Pennsylvania.

March 14, 1988.

Gary S. Glazer, Asst. U.S. Atty., for U.S.

Howland W. Abramson, Philadelphia, Pa., for Curtis C. Carson, Jr.

Kenneth Harris, Philadelphia, Pa., in pro. per.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are the post-trial motions of defendants Kenneth S. Harris ("Harris"), Romaine G. Phillips ("Phillips") and Matthias Brown, a/k/a "Sonny," ("Brown"). After a review of the submissions by the parties, the court believes that the sequence that should be followed in addressing post-trial motions, to the extent that they are entitled to be addressed in this Opinion, will be to discuss the questions raised by Phillips first, Brown second, and Harris last. Defendants request relief in the alternative: judgment of acquittal pursuant to Fed.R. Crim.P. 29(c); arrest of judgment pursuant to Fed.R.Crim.P. 34; or a new trial pursuant to Fed.R.Crim.P. 33. For the reasons stated herein, defendants' motions will be denied.

### I. *Romaine G. Phillips*

Phillips submits two grounds in support of his motion to arrest judgment: (1) the government's "amendment" of its indictment and (2) the failure of the indictment to charge an offense under 18 U.S.C. § 1962(d). Fed.R.Crim.P. 34 provides in pertinent part:

> The court on motion of a defendant shall arrest judgment if the indictment or information does not charge an offense ...

■ At the conclusion of the presentation of the evidence and prior to the submission of the case to the jury, the government submitted a redacted indictment (Exhibit C–1). At the court's direction the government deleted from the 109 overt acts charged in the indictment 15 of those acts because by their very terms they were not grammatically or in any other sense "overt acts." For example, Overt Act No. 29 simply stated that Rodney Brown had been arrested and charged on or about October 18, 1985, which plainly is not an overt act, although it is an item of evidence that is part of the case. Indeed, the overt acts which the court directed be removed because they were not by their terms "overt acts" were facts that were in public records and were not in dispute, and were either stipulated to as being correct or were admitted or conceded as true by the defendants or their counsel. With the exception of Phillips' objection as to prejudicial variance which the court overruled, the court accepted the parties having agreed to the form of the redacted indictment.

■ Phillips also complains about the court's removal from the jury's consideration as a "predicate act" against Phillips his alleged involvement in the case of *Commonwealth v. Carl Thomas* ("*Thomas*"). *See* "Racketeering Act No. Four" at page 26 of the Indictment. Count II of the indictment in which Phillips was charged in addition to the conspiracy count, accused him of being a participant under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c). The court did not strike any of the evidence in respect to the *Thomas* case, nor did it approve the removal of *Thomas* or any feature of it from any place else in the redacted indictment. Indeed, the court concluded that the evidence respecting that case, including the testimony of defendant

Thomas himself, was relevant and the attorneys argued that case at length to the jury and all features of that case received into evidence were considered by the jury in respect to the issues to be decided by them. The reason the court removed the *Thomas* case as one of the "predicate acts" from Count II (leaving seven acts in the indictment instead of eight) was not to impact upon Phillips, but in order to allow a proper verdict respecting Harris because the government failed to offer sufficient evidence for a jury to conclude that bribery under Pennsylvania law or solicitation of bribery had taken place between Phillips and Thomas as the government alleged in the indictment. For this reason it would have been improper for the jury to be permitted to consider the *Thomas* events as an eligible "predicate act" against Phillips' co-defendant Harris. The *Thomas* matter was plainly relevant for purposes of other issues in the case, and specifically in respect to the conspiracy charge that named all defendants including Phillips and the court so instructed the jury. The pertinence of removing the *Thomas* predicate act was to reduce to only one the number of alleged predicate acts against Phillips in the substantive RICO charge. Title 18, United States Code, § 1962(c), requires that a "pattern" of criminal activity as described in the indictment be proven by the government as an element of a substantive RICO charge. "Pattern" in turn requires, at a minimum, that at least *two* alleged predicate acts be found by the jury to have been committed by the defendant the jury is considering beyond a reasonable doubt and unanimously. 18 U.S.C. § 1961(5). The removal of this one predicate act left only one other predicate act that the court could consider Phillips had committed, and even if he had, the commission of just one predicate act would have been insufficient

to sustain a Count II conviction; hence, the motion under Fed.R.Crim.P. 29(a) was granted by the court and Count II was dismissed against Phillips. Under these circumstances the court can see no reason why this defendant was prejudiced.[1]

▮▮ Phillips was convicted of Count I, conspiracy to violate RICO, 18 U.S.C. § 1962(d). The court correctly charged that in order to convict a defendant of Count I, the jury must find unanimously and beyond a reasonable doubt that each defendant knowingly and willfully agreed to join the conspiracy with knowledge of its goals and knowledge that at least two acts of racketeering of the type described in the indictment (*i.e.*, bribery under state law and extortion under federal law) would be performed by some member(s) of the conspiracy. *See United States v. Adams*, 759 F.2d 1099, 1115–1116 (3d Cir.), *cert. denied*, 474 U.S. 971, 106 S.Ct. 336, 88 L.Ed.2d 321 (1985). Phillips argues that since Count I charges a conspiracy to violate Count II and Count II did not identify *two* acts of racketeering activity which were to be the object of Phillips' membership in the conspiracy, Count I was improperly submitted to the jury because there was no valid charge of a violation of 18 U.S.C. § 1962(d). Phillips' position is that "absent a charge and proof of an agreement to commit two of the specified predicate crimes, a defendant cannot be convicted of conspiring to participate in the affairs of an enterprise through a pattern of racketeering activity." Defendant Phillips' motion at 6, n. 4; *United States v. Neapolitan*, 791 F.2d 489, 501 (7th Cir.1986), *cert. denied sub. nom.*, *Messino v. United States*, 479 U.S. 939, 107 S.Ct. 421, 93 L.Ed.2d 371 and 479 U.S. 940, 107 S.Ct. 422, 93 L.Ed.2d 372, *quoting United States v. Martino*, 648 F.2d 367, 396 (5th Cir.1981). The court cannot agree with Phillips' position because it improperly

1. As another example of what was removed from Count II was a portion of the sentence in the third paragraph of Racketeering Act No. Three (paragraph 10 of Count II) which referred to an alleged quotation of Phillips in Exhibit G–60 that had been gathered through electronic surveillance and had been previously ruled inaudible in the December 17, 1987 *Starks* hearing. Phillips argues that this removal consti-

tutes a *"per se* violation of the grand jury clause of the Fifth Amendment." The deletion had the effect of reducing rather than broadening the charges against Phillips. The changes in the indictment were not essential to the offense with which Phillips was convicted. *United States v. Miller*, 471 U.S. 130, 140–145, 105 S.Ct. 1811, 1817–1819, 85 L.Ed.2d 99 (1985).

characterizes the law of this circuit. In phrasing this issue the defendant has quoted from *Neapolitan.* What Phillips expressly avoids here but which is obviously implicit in his description of the issue in this case and therefore *must* be added is the word *"personally"* before the word "commit." Otherwise, Phillips, by embracing *Neapolitan,* must also embrace the conviction of *Neapolitan* and its affirmance by the United States Court of Appeals for the Seventh Circuit, in respect to which certiorari was denied by the United States Supreme Court.

Phillips advocates that *Neapolitan* supports his position. The court disagrees. In *Neapolitan,* the Seventh Circuit addressed what degree of relationship is necessary between a defendant and the alleged predicate acts to sustain a conviction of RICO conspiracy, 18 U.S.C. § 1962(d). Robert Neapolitan ("Neapolitan") was named in four counts of mail fraud and one count of RICO conspiracy. He was acquitted of all the counts of mail fraud by the district judge and went to trial on the RICO conspiracy count only. The four acts of mail fraud and eleven acts of bribery were the predicate acts which constituted the pattern of racketeering activity under 18 U.S.C. § 1961(5). Neapolitan was identified in only one act of bribery. Having been acquitted with respect to the four mail fraud counts, Neapolitan's only involvement in the conspiracy as recounted in the indictment was limited to the solicitation of *one* cash bribe. Neapolitan was found guilty of RICO conspiracy. *Id.* at 492–493. The Seventh Circuit noted that "a conspiracy to violate RICO should not require anything beyond that required for a conspiracy to violate any other federal crime," *id.* at 497, and that Congress, more likely than not, intended that 18 U.S.C. § 1962(d) be "broad enough to encompass those persons, who, while intimately involved in the conspiracy, neither agreed to *personally* commit nor actually participated in the commission of the predicate crimes." *Id.* at 498. (Emphasis added).

Neapolitan claimed that the government could not establish that he agreed to the commission of two acts of bribery since he was identified in only *one* act of bribery. The Seventh Circuit found substantial circumstantial evidence to support an inference that Neapolitan agreed to the commission of at least two predicate acts in the indictment even though he was personally involved in only one act. The Seventh Circuit thus affirmed Neapolitan's conviction.

Substantial evidence also exists here from which the jury could have and apparently did infer that Phillips agreed to conduct the affairs of the Court of Common Pleas of Philadelphia through a pattern of racketeering activity and that he agreed to join the conspiracy with knowledge of its goals and knowledge that at least two acts of racketeering of the type listed in the indictment be performed by one *or more* co-conspirators.

■ Phillips next argues that there was a prejudicial variance because the government initially alleged that Phillips was involved in two predicate acts: (1) an offer of $100.00 to Harris to reinstate Roland Sligh's bail and (2) Phillips' agreement to act as an intermediary in Harris' bribery solicitation of Carl Thomas. Contrary to Phillips' statement, even though the court granted Phillips' motion pursuant to Fed.R. Crim.P. 29(a) on Count II because of the government's failure of proof with respect to the *Thomas* case, the court ruled that the evidence may be considered in evaluating what role, if any, Phillips had in the conspiracy. Therefore, the *Thomas* matter was a possible object of the conspiracy. The allegations with respect to *Commonwealth v. Roland Sligh* (*"Sligh"*) and $100.00 were known and the subject of the December 17, 1987 court proceedings, prior to the trial. There was sufficient evidence to infer that Phillips bribed Harris to effect the release of Sligh from jail.

The court concludes that Phillips had sufficient notice of the charges in the indictment. The word "bean" was exised from Exhibit G–60 at line 19 on December 17, 1987, well in advance of trial. Phillips' prejudicial variance argument is without merit. *See United States v. Schurr,* 775 F.2d 549 (3d Cir.1985).

■ Phillips contends that the court should grant judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) because there is insufficient evidence to sustain the conviction on Count I. Phillips states as follows:

> The Court charged the jury, both in its main charge, and in a supplemental charge addressed to questions asked by the jury during deliberations, that in order to convict Phillips of conspiring to participate in the affairs of an enterprise through a pattern of racketeering activity it was necessary that the jury find that Phillips had either agreed to personally commit, *or had knowledge* of the commission of, at least two acts of racketeering listed as the predicate acts of Count II of the indictment.

Defendant Phillips' motion at 9. (Emphasis added.)

This statement in Phillips' motion is a flagrant distortion of the record. The court charged the jury that in order to convict Phillips of Count I, the jury must find that Phillips had *either* agreed to personally commit or knowingly agreed to become a member of a conspiracy that he knew had as one of its objects the commission by some person(s) in the conspiracy of at least two acts of extortion and/or bribery as described in the indictment.

There was evidence that Phillips bribed Harris for the suppression of evidence in the *Commonwealth v. Rodney Brown* ("*Rodney Brown*") case and that he bribed Harris for his assistance in securing the transfer of the *Commonwealth v. Loretta Massey* ("*Massey*") matter to Judge Ronald Merriweather. Testimony revealed that Phillips went to the holding cell to attempt to secure money from Thomas, whose bail had been revoked by Harris, to effectuate Thomas' release from jail. There was additional testimony and a videotape involving the *Commonwealth v. Alvis Mapp* ("*Mapp*") case (Racketeering Act No. Six). Phillips testified that Thomas Henshaw, on behalf of Mapp, gave money to Harris who was in turn to deliver the money to Phillips for Mapp's defense. The jury could have inferred that Phillips' explanation was incredible since the government had a recorded telephone call from Harris to Henshaw wherein Harris asked Henshaw why he did not make it to City Hall that same day and Henshaw replied that he was sick.

■ Phillips requests a new trial based upon the fact that the court refused to grant a severance on grounds that Harris and Phillips possessed antagonistic defenses. Fed.R.Crim.P. 14 provides in pertinent part:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants or provide whatever other relief justice requires ...

The court exercised its discretionary power in denying Phillips' motion for severance. *See United States v. Ward,* 793 F.2d 551, 556 (3d Cir.1986), *citing United States v. Wright–Barker,* 784 F.2d 161, 175 (3d Cir. 1986). Phillips "must demonstrate clear and substantial prejudice resulting in a manifestly unfair trial." *United States v. Reicherter,* 647 F.2d 397, 400 (3d Cir.1981). The court must look to whether a jury can compartmentalize evidence which relates to separate defendants. *United States v. De-Larosa,* 450 F.2d 1057, 1065 (3d Cir.1971), *cert. denied,* 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972).

Phillips contends that he and Harris engaged in a swearing contest during the presentation of the facts to the jury. Phillips, however, provides no citations to the record and has not even ordered the transcript of his own or Harris' testimony. The court believed, at the time it denied Phillips' motion for severance, and continues to believe after hearing all the evidence and arguments, that Phillips' request for a severance is without merit. In fact, to a certain extent Harris' and Phillips' testimony corroborated each other. Both testified that Phillips did not pay any money to Harris to "fix" cases or get any favorable treatment.

232

■ Even if it were true, Phillips' assertion that his and Harris' "defenses were antagonistic is not itself a sufficient ground for severance." *United States v. Barber*, 442 F.2d 517 (3d Cir.), *cert. denied*, 404 U.S. 958, 92 S.Ct. 327, 30 L.Ed.2d 275 (1971); *United States v. Butts*, 535 F.Supp. 608, 610 (E.D.Pa.1982). Phillips has not shown that the alleged "antagonistic defenses were so prejudicial that the jury unjustly inferred the guilt of both defendants from the conflict itself." *Id.* The interests of judicial efficiency and consistency were served in trying these defendants, all charged with RICO conspiracy, together. *United States v. Ward, supra,* at 556; *United States v. Jackson*, 649 F.2d 967 (3d Cir.), *cert. denied*, 454 U.S. 871, 102 S.Ct. 341, 70 L.Ed.2d 176 (1981).

■ The next error alleged by Phillips concerns the plea agreement the government entered into with Conrad Cheeks ("Cheeks"), judicial aide for Harris and a co-defendant in the case. Phillips asserts that the court erred in denying the motion for mistrial after Cheeks disclosed his plea agreement with the government at the end of jury selection. Jury selection began on January 5, 1988 and continued through January 7, 1988. The government states that it had limited plea discussions until the evening of January 6, 1988 and on January 7, 1988 Cheeks indicated he would plead guilty to Count I and cooperate with the government. At the point that Cheeks indicated he would plead guilty to Count I and cooperate with the government, the first twelve (12) jurors who thereafter deliberated and rendered the verdict, had already been selected and sequestered. That is, at the end of the court day on January 6, 1988, the twelve (12) jurors who ultimately rendered the verdict and one (1) alternate juror had been selected. On January 7, 1988, the final three (3) alternates (Jurors 44, 45 and 51) were selected after the use of the defendants' second collective preemptory challenge, all other strikes being for cause. When counsel for Harris made the original motion for a mistrial, the court asked him the reason(s) for the motion. Harris' counsel replied that Cheeks' attorney had participated in the defense's decision-making process as to whether or not to exercise a preemptory challenge. When pressed, however, Harris' counsel admitted that the only participation counsel for Cheeks had in that decision-making process was to answer "no" to Harris' attorney's question as to whether Cheeks' counsel had any objection to prospective Juror 46 becoming alternate Juror 4.

In reference to the absence of Cheeks and his attorney from the defense table, the court told the parties, out of the jury's presence, that its inclination was to tell the jurors that they were not going to be considering the case against Cheeks. The court then asked for suggestions from defense counsel. All parties, with the exception of counsel for Brown, agreed with the court's proposed explanation. Counsel for Brown suggested that the jury be told *nothing,* which suggestion was overruled. The court then gave the parties a one day continuance to realign their defense in light of the Cheeks' change of plea.

The court believes and finds that there was no violation of the defendants' right to a trial by jury.

■ Phillips alleges that the court committed error in admitting testimony regarding the *Brown* case (overt acts 30 through 36) and the *Massey* matter (overt acts 38 through 43) and in charging the jury that one overt act must be proven in order to convict of the conspiracy charged in Count I.

The court does not agree with Phillips' statements that "[t]he supposed 'overt acts' were not acts in furtherance of the conduct charged in the indictment ... and were unrelated transactions without meaningful connection to the incidents which *were* charged in the indictment." Phillips' motion at 15. (Emphasis in original). Overt Acts 30 through 36 show Harris' and Cheeks' discussions regarding the suppression of evidence in the *Brown* case. Cheeks testified that this was the first time he and Harris were doing business with Phillips and that Phillips gave Cheeks $700.00 to give Harris for the "fix" on the

*Brown* case. These acts occurred between May 13, 1986 and May 27, 1986.

Overt Acts 38 through 43 refer to Phillips' connection to the *Massey* case. In April of 1986, Massey, Harris' court stenographer, was arrested for bringing hashish into the country. On or about April 15, 1986, Harris referred the *Massey* case to Phillips. Cheeks testified that, at Harris' direction, he picked up $250.00 from Phillips for the *Massey* case. On September 9, 1986, Phillips and Harris were seen dividing up what the government alleged was money in the robing room. The next day Harris and Phillips went to the courtroom where Massey's case was listed, and Harris asked the judge there that Phillips be given a continuance. The date and courtroom previously discussed by Phillips and Harris in the robing room was requested by Phillips.

Phillips argues that this evidence was introduced in violation of Fed.R.Evid. 404(b). The court disagrees. The facts as alleged in Count I show that Harris, Cheeks, Brown, Phillips and others were involved in a conspiracy from on or about April 1, 1986 to on or about October 18, 1986. The evidence revealed that Phillips entered the conspiracy at least by May 14, 1986 (Exhibit G–20), and there is no indication that he withdrew from the conspiracy at any time during its duration. The *Brown, Massey, Thomas* and *Mapp* cases all help form the basis of the conspiratorial activity charged in Count I. These acts are admissible against Phillips as declarations or acts of co-conspirators in furtherance of the conspiracy. *See United States v. Jannotti*, 729 F.2d 213 (3d Cir.1984).

■ Phillips alleges that the government failed to prove Count I because it failed to prove conspiracy to participate in a pattern of racketeering. Title 18, Section 1962(d) defines a RICO conspiracy as a conspiracy to violate 18 U.S.C. § 1962(c). While some RICO conspiracies may and do have identifiable "predicate acts," *e.g.*, burning of a building, others involve commission of offenses that will arise from facts and cases that are not precisely known at the time the conspiracy is formed but will be identified during the course of the conspiracy. For example, in this case, there was no intent that particular buildings be burned or particular bribes be paid by identified people but the bribery and extortion developed on a case-by-case basis as the cases before Harris ripened. There was evidence that Brown would be stationed in the courtroom and would receive hand signals from Harris when a likely victim would walk into the courtroom.

Phillips' argument perpetuates his mistaken premise that the *only* object of the Count I conspiracy is the violation of the eight "predicate acts" *listed* in Count II of the indictment. He continues this argument by saying, at best, Phillips participated in one act of racketeering with reference to the *Sligh* matter and that the continuity plus relationship requirement of a pattern of racketeering activity enunciated by the United States Supreme Court in *Sedima, infra*, is missing. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985); *Marshall–Silver Construction Company, Inc. v. Mendel*, 835 F.2d 63 (3d Cir.1987). The court remains unpersuaded by Phillips' argument on this point. Phillips' conviction under Count I is supported by the evidence. The fact that he may have been personally involved in only one listed act of racketeering did not preclude him from being convicted of the RICO conspiracy charge.

Phillips presents his last three bases for alleged court error through headings only. First, he claims the verdict of the jury was insufficient as a matter of law to sustain a judgment of guilty. The court finds this claim to be without merit. Second, Phillips argues that evidence gathered by electronic surveillance should have been suppressed because of lack of probable cause and improper minimization by the government. United States District Judge J. William Ditter, Jr. ruled in a Memorandum and Order dated November 23, 1987, as to many of the electronic surveillance challenge issues, and the court's reasons for the finding of proper minimization are addressed at length in this court's Memorandum of Feb-

ruary 29, 1988. Third, Phillips seeks leave to raise issues as may become "apparent" after he sees the printed record. Phillips has not ordered the transcript of the entire record so any issues that have not yet become "apparent" may never become "apparent." To date, only certain transcripts have been ordered and most of that has been done by the government. The court does not know what the other "unapparent" grounds are and will probably never know since the court reporter was not asked by Phillips or anyone else to transcribe the entire record.

## II. *Matthias Brown, a/k/a "Sonny"*

Brown makes substantially the same arguments espoused by Phillips. He asks the court to grant his motion to arrest judgment pursuant to Fed.R.Crim.P. 34 because it is his position that the indictment failed to charge an offense under 18 U.S.C. § 1962(d), and even if it did the government failed to prove that offense. Brown was only charged with RICO conspiracy in Count I. He presents himself to the court in the unhappy position of having testified before the jury and admitting that he intended to extort money from McNesby (unknown to Brown to be a city detective) on the *Commonwealth v. Joseph Heffron* (*"Heffron"*) case. He told the jury that Heffron's dilemma of being in jail gave him an opportunity to make some money. Brown's principal defense to the RICO conspiracy charge was that he was only an extortioner and not a conspirator and therefore he should be acquitted of conspiracy. His conduct in the *Heffron* extortion was enough to support a charge of conspiracy. In addition, other photographic evidence and surveillance was supplied as corroboration. Accordingly, the court denied Brown's oral motion pursuant to Fed.R. Crim.P. 29(a) and continues to reject Brown's argument on this issue.

■ Brown's motion states that the court should grant judgment of acquittal pursuant to Fed.R.Crim.P. 29(c) because there is insufficient evidence to sustain Brown's conviction under Count I. The motion then gives a verbatim recitation of

Phillips' incorrect version of the court's jury charge. As discussed earlier, this characterization of the court's charge is a flagrant distortion of the record.

The evidence presented by the government revealed Brown's involvement in soliciting bribe payments with respect to the *Heffron* case. Detective James McNesby testified in great detail about his nephew's (Heffron's) probation violation hearing and how "for a figure" Brown could get Heffron released. Tape recordings of subsequent meetings and dealings were played for the jury. The jury also heard evidence of Brown's involvement with Harris in the solicitation of Laverne Taylor ("Taylor") in respect to her criminal case and her friend Michael Purnell's ("Purnell") case. Taylor testified that after being sentenced by another judge on July 30, 1986, she went to Harris' courtroom because Purnell was there as a criminal defendant and she thought Purnell might get a break if Taylor was in the courtroom. Taylor testified that Brown was outside the courtroom and told her that he would speak to Harris about both matters. Taylor testified that, according to Brown, Harris wanted money in some amount less than $500.00 before she left that day. Her testimony was that she paid no money because she did not believe Brown had discussed the matters with Harris because she did not think that anyone like Harris who had to go through so much schooling would take so little money to fix a case. A July 2, 1986 conversation (Exhibit G–35) between Brown and Harris evidenced the knowledge of Brown and Harris with regard to another shakedown. There was sufficient evidence from which the jury could and apparently did conclude that Brown met the knowledge requirements of a co-conspirator in a RICO case.

■ Brown alleges that the court committed error in admitting testimony of Laverne Taylor and Roger Taylor in support of the RICO conspiracy charged in Count I. Roger Taylor, Brown's son-in-law, testified about his arrest in September of 1986 because of an unpaid fine from three years earlier. Roger Taylor telephoned called

Cheeks and asked him why Cheeks had not "taken care of" the matter three years ago when he gave the fine papers to Cheeks. The evidence was probative of Brown's involvement in the conspiracy.

The court cannot address Brown's assertion that the court erred in refusing to grant a side-bar conference after objections to the government's leading questions or during the direct examination of Cheeks because Brown does not outline what "prejudicial testimony" was before the jury or what "specific reference" to this testimony was made in the jury charge.

### III. *Kenneth S. Harris* [2]

Harris contends that the court erred in not suppressing electronic surveillance of his judicial chambers, judicial robing room, and judicial telephone on grounds that his judicial privacy was infringed. This motion was denied by Order dated October 23, 1987. For the reasons enunciated in that Order, the court rejects Harris' judicial privacy arguments.

■ Harris states that the government, both in its opening statement and closing argument, used inflammatory remarks and statements of personal opinion and as a result Harris' right to due process and a fair trial was denied. In the government's opening statement the word "corrupt" was used. Harris' contemporaneous objection was sustained and the prosecutor continued in line with the court's ruling. In closing *argument* the prosecutor properly argued the government's case. Use of "cesspool justice" and analogous phrases do not rise to the level of denial of due process.

■ With regard to Cheeks' cooperation arrangement with the government and defendants' claim that they were prejudiced due to the "contingent nature" of that arrangement, the following facts of record must be noted. Shortly after the completion of voir dire, at approximately noon on January 7, 1988, the government and Cheeks' attorney, Thomas Moore, Esquire, informed the court and the defense

that Cheeks had orally agreed to change his plea to guilty on Count I. At that time the terms of that oral agreement were outlined on the record by the government and Cheeks' attorney. It was clear that the terms of that plea agreement were still being discussed and the court granted a brief recess to allow Cheeks to speak with his attorney. The court reconvened and the terms of the plea agreement were stated with more specificity by the government and Cheeks' attorney. While the compensation package had still not been finalized to the last detail (which had primarily to do with relocation expenses), it was agreed to be the subject of future negotiation by Cheeks' attorney and the government. Cheeks agreed to have his attorney and the government negotiate to reach a "reasonable" end result, and he stated that he was willing to accept the government's determination of compensation if his attorney, after negotiating in good faith and in accordance with his responsibilities under the Code of Professional Responsibility, accepted the final arrangement. The fact that the exact amount of Cheeks' financial compensation was not definitively resolved before Cheeks testified at the trial was the proper object of cross-examination by the defendants who he testified against. This circumstance is not in and of itself a sufficient basis to strike the testimony.

Harris submits that the court erred in not granting a mistrial when government witness Barry Denker ("Denker") and Cheeks referred to other alleged acts of misconduct. Without the benefit of the transcribed record the court cannot refer to the specific testimony that Harris alleges is a basis for error. The court recalls only one instance when Denker testified he had been paying off judges for years or a remark to that effect. There was no specific reference to Harris, and the court sustained defendant's objection to the general statement. The court does not recollect any occasion where Cheeks referred to "repeated acts of misconduct" which were outside of the conspiratorial period.

---

2. The court has already addressed the questions of severance, striking of the jury panel after

Cheeks' desire to cooperate and the RICO conspiracy charge earlier in this Memorandum.

With regard to Harris' contention that the court's charge or failure to charge as to cocaine use, payment of a witness and immunity from prosecution, the court stands by the rulings rendered at the charging conference on January 22, 1988. Cheeks' undetermined fee arrangement with the government was not a basis to preclude his testimony. The fact that all the details of payment were not finalized bears upon the weight and credibility of the testimony, not its admissibility. The court adheres to its rulings that attorneys Joseph Santaguida, Harry Seay and Ruben Rodriguez were not entitled to judicial immunity.

CONCLUSION

The court finds that the government, through electronic and physical surveillance, defendants' live testimony, and accomplice testimony, proved beyond a reasonable doubt that the defendants were engaged in an ongoing enterprise of exacting financial payment for a variety of promised acts by Harris or those who it was represented that he could influence. Accordingly, all post-trial motions will be denied.

An appropriate Order will be entered.